## WAIT WELLS WILSON *v.* CHARLES A. BANNEN.
### JAMES P. SWAIN *v.* THE SAME.

Attachment by plaintiff of goods belonging to defendant, in the hands of third persons, who were made garnishees. The latter delivered up the goods, except a part retained to secure an amount due to them, as agents of a ship, for freight of the whole lot. A rule having been obtained by the plaintiffs on the garnishees, to show cause why they should not deliver up the goods retained, the latter suffered it to be made absolute, without objection, and on execution, surrendered the balance of the goods to the sheriff. On a subsequent rule by the owners of the ship, against the plaintiffs, defendant, and sheriff, to show cause why the freight of the whole lot of goods, should not be paid by preference out of the balance last surrendered by the garnishees, *Held:* that the defendant, though without interest in the question of privilege, as between the plaintiffs and the owners of the ship, is interested in defeating the claim of the latter, and may plead prescription against it; that no prescription could run so long as any of the property remained in the hands of the agents of the ship owners, as a pledge for the payment of the freight, such pledge being a standing acknowledgment of the debt; and that it commenced running only from the delivery of the goods to the sheriff, from which time the owners of the ship had fifteen days to assert their privilege for the freight, and one year to urge their claim against the debtor.

Prescription is interrupted, wherever the debtor, or possessor acknowledges the debt, or adverse right, against which it was running.

A ship owner may retain all the goods shipped, untill the whole freight bill is paid. Every part of the goods is liable for the whole debt. Where a part only of the goods shipped have been retained as security, it will be liable for the whole freight.

APPEAL from the District Court of the First District, *Buchanan,* J.

*J. C. Clark,* for the plaintiffs. No counsel appeared for the defendant and appellant.

*Wray,* for the appellees.

MORPHY, J. A lot of goods, which arrived in this city in the ship Ocmulgee, in the autumn of 1838, was attached in these suits. Bein and Cohen, agents of the New Orleans and Louisiana line of ships, to which the Ocmulgee belonged, were made garnishees. The goods levied on were sold, with the exception of one hundred and five kegs of nails, which were retained by the garnishees, to secure the payment of the freight due on the lot of goods. Long subsequently, the plaintiffs ruled the garnishees into court, to show cause why they should not deliver up the one hundred and five kegs of nails, which they had refused to do, or, in default thereof, pay the full amount of their respective judgments. Instead of appearing and showing their lien on the property, the garnishees suffered the rule to be made absolute against them. On the execution issued against them, they delivered to the sheriff the one hundred and five kegs of nails, on the 15th of January, 1840. On the 29th of the same month, Thomas J. Leavitt, and others, owners of the ship Ocmulgee, took a rule on the plaintiffs, the defendant, and the sheriff, to show cause why they should not be paid by preference and privilege, the freight on the goods originally attached, amounting to $328 61, out of the proceeds of the one hundred and five kegs of nails delivered up by their agents, Bein and Cohen, in conformity with the order of the court. On this rule, there was a judgment below in favor of the owners of the ship, from which the plaintiffs and defendant in these suits have appealed.

On the trial of the rule, the attorney appointed to represent the absent defendant, Bannen, filed a written answer, pleading the prescription of one year against the claim of the third opponents. This was objected to by the latter, on the ground that the defendant had no interest in the property in dispute, and could not make such a plea. The defendant was, perhaps, without interest in the question of privilege to be debated between the other parties to the rule, but surely it cannot seriously be contended, that he was not interested so far as the establishment of the debt was concerned. If he succeeded in defeating the claim, it would be so much more paid to the plaintiffs in discharge of their judgments against him. The plea was, therefore, properly admitted, but we can see no difficulty in disposing of it. Prescription is interrupted, and ceases to run, whenever the debtor, or the possessor acknowledges the debt,

or the adverse right, against which it was running. Civ. Code, art. 3486. This acknowledgment may be express or implied. In this case, it is of the latter character. As long as the one hundred and five kegs of nails remained in the hands of the owners of the ship, or their agents, as a pledge for the payment of their freight, no prescription could run, because the pledge was a standing acknowledgment of indebtedness on the part of the defendant, Bannen. It began to run only from the delivery of the goods to the sheriff, and from that time, the owners of the ship had fifteen days to assert their privilege on the property, and one year to urge their claim against their debtor. Civ. Code, arts. 3213, 3499. 2 Troplong on Prescription, Nos. 534, 618, and 628.

It has next been urged, that, at all events, the privilege claimed should be allowed only for the freight due on the one hundred and five kegs of nails, retained by the garnishees, or agents of the owners of the ship. To this we cannot listen. The latter had the right of retaining all the goods to answer for the freight bill, and each and every part of such goods was liable for the whole debt. They were not bound to surrender any part of them until their bill was paid, or satisfactory security given. Instead of doing this, they retained only such a portion of the goods, as they supposed to be sufficient to secure their debt. It must, therefore, be liable for the whole freight. Civ. Code, arts. 3130, 3131, and 3138.

*Judgment affirmed.*