ST. PAUL, J.
 

 On November 2, 1927, plaintiff agreed to sell, and defendant agreed to buy, plot 3 of block B of the Oak Hill subdivision of Caddo parish for the sum of $6,510, payable $2,000 cash and $4,510 in a note, payable December 31,1928. The seller was to make certain improvements on said subdivision such as hard-surfaced streets, ornamental street lights, sewerage and water and gas connections, and to complete same before January 1, 1929. Otherwise the purchaser was entitled to- return the property and get back his note and $2,000 cash with interest and reasonable attorneys’ fees in case of suit.
 

 At that time the real estate firm of Montgomery
 
 &)
 
 McClelland had an option on said subdivision for some $70,000, which, however, was not recorded, and had not yet been exercised.
 

 Defendant was tendered a deed to said plot 3 by plaintiff but did not accept it. Instead thereof he accepted a deed to said plot from Montgomery & McClelland, who had purchased same under their option for $1,302, that being the proportionate value of said plot under their option. Defendant, however, paid Montgomery & McClelland $2,000 cash, and gave them his note for $4,510 payable December 31, 1928; being the same as the price agreed upon with plaintiff.
 

 Montgomery & McClelland negotiated said note to Samuel Feist before maturity, but did not make the improvements called for by the agreement of sale between plaintiff and defendant.
 

 Defendant refused, to pay the note at maturity, and threatened to sue plaintiff for the return of the $2,000 cash and the cancellation of his note, because of the failure to make the improvements. Whereupon plaintiff purchased the note for full value from
 
 *981
 
 Feist, and tlien brought this suit upon it. The defense is failure of consideration; and in reconvention defendant prays for the return of the $2,000, with interest and attorneys’ fees, and for the cancellation of the note sued upon.
 

 The cause of action for the reconventional demand is, in substance, that Montgomery & McClelland were mere parties interposed, and agents of plaintiff, and accordingly that plaintiff is bound under the deed from Montgomery
 
 &
 
 McClelland by all the stipulations and agreements contained in his promise of sale of November 2, 1927.
 

 ■ To say that Montgomery & McClelland were only the agents of plaintiff, and merely persons interposed, is simply to say that the sale from plaintiff to Montgomery & McClelland was a pure simulation, and that defendant’s deed to the land emanated in fact, though not in form, directly from plaintiff, and that plaintiff is therefore bound by the agreement contained in his promise of sale to defendant.
 

 If it were a fact that the deed from plaintiff' to Montgomery and McClelland were a pure simulation, and that plaintiff had received no price from Montgomery & McClelland when he sold to them, but had received, or should have received, the price (cash’ and note) which defendant paid to Montgomery & McClelland, then it may be that defendant might claim that the terms of his agreement to purchase from plaintiff must be carried into his deed of sale from Montgomery & McClelland.
 

 But, if in fact the sale by plaintiff to Montgomery & McClelland for $1,302 were a bona fide transaction, then the result would be that defendant of his own volition chose to purchase from Montgomery & McClelland instead of insisting upon having the property deeded to him directly by plaintiff, and thereby waived his contract with latter.
 

 But the trial Judge found, and the record abundantly supports his finding, that the sale by plaintiff to Montgomery & McClelland was a real and bona fide transaction. The latter had at the time an option to purchase the subdivision tract from plaintiff for a consideration in excess of $70,000, for which option they had paid' plaintiff $10,000 cash. And they afterwards exercised said option (through a corporation formed by themselves) and paid plaintiff an additional $10,000 in cash, furnishing their notes for the balance of the price. The evidence further shows that plaintiff did receive from Montgomery & McClelland the $1,302 for which he sold them plot 3 aforesaid; and that Montgomery & McClelland were entitled to receive, and did receive, the $2,000 cash and the $4,510 note for which they sold said plot to defendant.
 

 Defendant pleads that plaintiff is es-topped to deny that Montgomery & McClelland were his agents in the sale by them to defendant; but there is no evidence tending to support his plea. It is nowhere shown that plaintiff ever represented to defendant that Montgomery & McClelland were acting for him in their sale to defendant; on the contrary, the deed shows on its face that they were acting for themselves, and the only connection which plaintiff had with the transfer of this plot to defendant was that he agreed to sell the same to defendant as above said, and tendered to him a title to the same executed by himself, which defendant refused or failed to accept; and that, after defendant took title to the plot from Montgomery & McClelland, plaintiff then reguested the return of his promise of sale, including the agreement as to improvements, and asked defendant to accept a similar agreement as
 
 *983
 
 to improvements from Montgomery & McClel-land, which defendant refused to do.
 

 We think the reeonventional demand is without merit. And, as to the main demand, it is clear that plaintiff can recover on the note even though he purchased it after maturity, for he acquired it from a holder in due course before maturity. Therefore all equities between the drawer of the n.ote and the original holders thereof, Montgomery & McClelland, had been cut off, and plaintiff took the same title thereto as such holder had, unless the same or other equities existed between himself and the drawer of the note. But, in considering the reconventional demand, we found that there were no other equities between plaintiff and defendant.
 

 Decree.
 

 The judgment appealed from is therefore affirmed.